FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ SEP 3 0 2013 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

PAULINE VU,

                             Plaintiff,

       -against-

DIVERSIFIED COLLECTION SERVICES, INC.,

                            Defendant.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-5178 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Pauline Vu brought this action against Defendant Diversified Collection

Services, Inc. ("DCS") in 2010, alleging that Defendant's communications with her in

connection with attempts to collect a debt violated various provisions of the Fair Debt Collection

Procedures Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). Presently before the court are

(1) Plaintiff's Motion for Class Certification as to two separate classes, (2) Plaintiff's Motion for

Summary Judgment as to all claims, and (3) Defendant's Cross-Motion for Summary Judgment

as to all claims. For the reasons below, Plaintiff's Motion for Class Certification is DENIED IN

PART and GRANTED IN PART, Plaintiff's Motion for Summary Judgment is DENIED IN

PART and GRANTED IN PART, and Defendant's Cross-Motion for Summary Judgment is

DENIED.

# I.    BACKGROUND

## A.    Statement of Facts

      The following facts are primarily taken from the statements of material facts submitted

by the parties pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1. (See Dkts.

49-2, 54, 55, 59-1.) Each party submitted a statement of facts and also responded to each other's

1

initial submissions. Except as otherwise noted, the court will refer to the undisputed portions of these statements of facts where possible, and will otherwise refer to evidentiary sources from the record on summary judgment.

### 1. Contact Between Plaintiff and Defendant

Plaintiff took out various student loans to finance her education. (Pl. Resp. 56.1 St. (Dkt. 59-1) ¶ 1.) Plaintiff became delinquent on some of those loans, which went into collection. (Id.) In 2010, Defendant attempted to contact Plaintiff by telephone to collect her delinquent student loan debt. (Pl. 56.1 St. (Dkt. 49-1) ¶¶ 3, 12, 13; Def. 56.1 St. (Dkt. 55) ¶ 24.) The parties dispute the precise date that Defendant first called Plaintiff and whether any message was left. Plaintiff alleges Defendant's representative began calling her at the end of September 2010 or beginning of October 2010 and left two voicemails. (Affidavit of Pauline Vu ("Vu Aff.") (Dkt. 48-2) ¶¶ 12-17.) Defendant contends it called Plaintiff as early as August 31, 2010, but that it did not leave a voicemail until October 14, 2010. (Affidavit of Dennis Christie ("Christie Aff.") (Dkt. 52) ¶ 5 and Ex. 1 ("Transaction History").) It is undisputed, however, that on October 5, 2010, then DCS employee Jennifer Holm, using the alias Jamie Adams ("Adams"), spoke with Plaintiff on the phone about the status of her debt and payment options ("October 5th Call"). (Pl. 56.1 St. ¶¶ 14, 21; Def. 56.1 St. ¶ 27.) The October 5th Call was the first live conversation between Defendant and Plaintiff. (Def. 56.1 St. ¶¶ 25-26; Pl. Resp. 56.1 St. ¶¶ 25-26.)

After the October 5th Call, Defendant mailed a debt collection letter dated October 15, 2010, to Plaintiff at her home address ("October 15th Letter"). (Pl. 56.1 St. ¶¶ 22-25.) The October 15th Letter was mailed on or after October 18, 2010. (Id. ¶ 24.) It was a form letter produced from one of Defendant's templates. (Kidd Reply Decl. (Dkt. 58-1) Ex. 2 (Christie Dep.), at 106:13-25.) The October 15th Letter stated, in relevant part:

Dear Pauline Vu,

As you are aware by now, Diversified Collection Services Inc. (DCS, Inc.) is responsible for collecting the above referenced account(s). We are requesting that you telephone this office at 209-858-3678, regarding your account rather than continuing to correspond by mail. We must talk to you in order to finalize any arrangements necessary to retire your obligation, otherwise we cannot intelligently evaluate your present situation.

We will hold your account for ten (10) days, from the date of this letter, to give you the opportunity to settle this obligation. Keep in mind that we are entitled to use, and we intend to use, all approved means at our command to collect debts which have been referred to us. This is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose.

You can, avoid further direct collection activity by contacting your representative for assistance.

DCS, Inc.
Jamie Adams
209-858-3678

SEE THE REVERSE SIDE FOR IMPORTANT INFORMATION.

(Montoya Decl. (Dkt. 51) Ex. 1, at DCSI_000007.) The reverse side of the October 15th Letter

stated, in relevant part:

IMPORTANT NOTICE OF RIGHTS

*If this is the first notice you receive, be advised that:*

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

3

(Id. at DCSI_000008 (emphasis in original).) The October 15th Letter was the only written communication Defendant sent to Plaintiff. (Pl. 56.1 St. ¶ 35; Def. Resp. 56.1 St. ¶ 35.)

## 2. Defendant's Procedures Regarding Issuance of a Validation Notice

Since 2007, Defendant has maintained a computerized system to process debtor accounts and store information regarding those accounts. (See Affidavit of Rashid Nasim ("Nasim Aff.") (Dkt. 53) ¶¶ 3, 5-7.) The system was set up by Defendant's computer programming staff under the supervision of IT Director Rashid Nasim. (Kidd Reply Decl. Ex. 2, at 161:8-16.) When Defendant receives delinquent accounts from a client (a public or private lender), Defendant's Computer Operations Department uploads the accounts into the system. (Nasim Aff. ¶ 5.) The accounts' data are reviewed for accuracy, and certain accounts are excluded from further processing due to various reasons, including bad addresses, bankruptcy filings, death, incarceration, suspension of accounts, and cease and desist demands. (Id. ¶ 8.) For each remaining account, the computer system is designed to automatically schedule the issuance of an initial demand letter within three days of the account being uploaded to the computer system. (Id. ¶ 6.) This step is designed to occur before the account is transferred to Defendant's collections division. (Id.) The initial demand letter is printed and mailed to the debtor the following business day at the latest. (Id.) Initial demand letters contain a notice of the debtor's rights, often termed a "validation notice." (Def. 56.1 St. ¶ 10; Pl. Resp. 56.1 St. ¶ 10.) Once the initial demand letter is issued and mailed, the account is assigned to collectors, who as part of the collections process may contact the debtor by telephone. (Nasim Aff. ¶ 7.) Upon receiving the account, collectors do not double check to confirm that an initial demand letter has been sent before contacting the debtor. (Kidd Reply Decl. Ex. 5 (Rebiero Dep.), at 76:22-77:10.) For each account, Defendant maintains a Debtor Collection Transaction History, a computerized log

4

that records the transactions and collection activities that have occurred on that account, such as the initial uploading of the account, the issuance of any letters, and any attempted or successful phone contact with the debtor. (See Nasim Aff. ¶ 9; Christie Aff. Ex. 1.)

For Plaintiff's account, Defendant's system did not work as intended. Defendant received Plaintiff's account and uploaded it into the computer system on August 13, 2010. (See id. ¶ 9; Christie Aff. Ex. 1, at DCSI_000001.) On August 16, 2010, the system scheduled the issuance of an initial demand letter, but due to a computer glitch, the letter request was "rejected." (Nasim Aff. ¶ 9; Christie Aff. Ex. 1, at DCSI_000001.) The glitch was a result of "client initiated changes" to the letter templates, which interfered with the system's normal process for generating the letter. (Nasim Aff. ¶ 10.) As a result, no initial demand letter was sent from Defendant to Plaintiff. (Def. 56.1 St. ¶ 15; Pl. Resp. 56.1 St. ¶ 15.) The first written correspondence sent to Plaintiff was the October 15th Letter. (Pl. 56.1 St. ¶ 35; Def. Resp. 56.1 St. ¶ 35.) According to Defendant, the glitch that affected Plaintiff's account also affected a number of Defendant's New York State accounts between November 9, 2009 and November 9, 2010, resulting in non-issuance of initial demand letters to 192 of the 26,065 accounts that underwent processing during that time.[1] (Nasim Aff. ¶ 11.)

## B. Procedural History

Plaintiff filed her class action complaint with the court on November 9, 2010, followed by an amended complaint on June 30, 2011, both asserting that Defendant's communications with her violated various provisions of the FDCPA. (See Compl. (Dkt. 1); Am. Compl (Dkt. 10).) Plaintiff claimed that Defendant's delay in sending written notice of her validation rights

---

[1] The court notes Plaintiff's disagreement with Defendant's arithmetic. (Pl. Reply Summ. J. 15.) Of 26,065 accounts, 25,582 were issued initial demand letters within five days, leaving 483 accounts. If Defendant claims 192 accounts were affected by the glitch, there are 291 unaccounted for. This discrepancy, however, does not alter the court's analysis.

violated the FDCPA's notice requirements and that the October 15th Letter contained false representations and language that overshadowed and contradicted the validation notice. (Am. Compl. ¶¶ 19, 27-28, 32, 37, 39.)

Plaintiff also brought this action on behalf of two classes, generally defined as, within the year predating the original complaint: (A) individuals to whom Defendant did not send a written validation notice within five days from the date of Defendant's "initial communication" with the individual (see id. ¶ 45), and (B) individuals who were sent debt collection letters by Defendant with substantially the same language as the October 15th Letter sent to Plaintiff (see id. ¶ 48).

After depositions and written discovery, Plaintiff moved for certification of these two classes pursuant to Federal Rule of Civil Procedure 23, arguing that the requirements under Rule 23(a) and (b)(3) are met. (Pl. Mem. Class Cert. (Dkt. 48).) Plaintiff simultaneously moved for summary judgment on all her claims on behalf of herself and the members of the proposed classes pursuant to Federal Rule of Civil Procedure 56. (Pl. Mem. Summ. J. (Dkt. 49).) Defendant cross-moved for summary judgment. (Def. Opp'n Summ. J. (Dkts. 50-55, 57).)[2] These motions are now before the court.

## II.    PRELIMINARY MATTERS

### A.    Concurrent Motions for Class Certification and Summary Judgment

The court first addresses whether the motions for summary judgment and class certification may be considered concurrently. The court recognizes that a decision on the merits may hold implications for class members' claims and influence the ultimate composition of the class. However, "[t]here is nothing in Rule 23 to preclude the Court from examining the merits

---

[2]    The court cites Defendant's memorandum of law that contains both its opposition to Plaintiff's Motion for Summary Judgment and its Cross-Motion for Summary Judgment as "Def. Opp'n Summ. J." Likewise, the court cites Plaintiff's memorandum of law that contains both her opposition to Defendant's Cross-Motion and her Reply in Support of her Motion for Summary Judgment as "Pl. Reply Summ. J."

of plaintiffs' claims on a proper . . . Rule 56 motion simply because such a motion is returnable contemporaneously with a class motion." Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 87 n.1 (E.D.N.Y. 1989). Although the Second Circuit has not directly addressed this issue, courts within the Circuit have previously decided summary judgment and class certification in a single order. See Ramos v. SimplexGrinnell L.P., 796 F. Supp. 2d 346 (E.D.N.Y 2011); Vega v. Credit Bureau Enters., No. 02-CV-1550 (DGT), 2005 WL 711657 (E.D.N.Y. Mar. 29, 2005); Cuzco v. Orion Builders, Inc., 262 F.R.D. 325 (S.D.N.Y. 2009). In addition the parties have raised no objections to the court's simultaneous consideration of the motions; quite the opposite—their briefing schedule has encouraged it. Accordingly, this court will proceed first with the issue of class certification and then address summary judgment.

### B. The Parties' Letters of February through April 2013

In its reply, Defendant asks the court to deem untimely Plaintiff's reply, a request that triggered a protracted exchange of letters. (See Def. Reply Summ. J. 2 n.1 (Dkt. 60); Feb. 26, 2013, Pl. Ltr. (Dkt. 62); Feb. 27, 2013, Def. Ltr. (Dkt. 63); Mar. 29, 2013, Pl. Ltr. (Dkt. 64); Apr. 2, 2013, Def. Ltr. (Dkt. 66).) Defendant's request is denied. Plaintiff certified that her Reply was served via first class mail on the deadline (see Pl. Reply Summ. J. (Dkt. 59) Cert. of Service), and the court has considered the reply alongside the other moving papers.

Plaintiff brought to the Court's attention the case of Sussman v. I.C. System, Inc., --- F. Supp. 2d ---, No. 12-CV-0181 (ER), 2013 WL 842598 (S.D.N.Y. Mar. 6, 2013) in a letter to which Defendant objects. (See Mar. 29, 2013, Pl. Ltr. re Additional Authority (Dkt. 65); Apr. 2, 2013, Def. Ltr. (Dkt. 66); Apr. 10, 2013, Pl. Ltr. (Dkt. 67).) Setting aside whether Plaintiff's letter contravenes the court's Individual Rules regarding surreplies, the court has read the decision and has given it the appropriate weight.

## III.    CLASS CERTIFICATION

Plaintiff brings a motion for certification of two classes pursuant to Federal Rule of Civil

Procedure 23. (See Pl. Mem. Class Cert. (Dkt. 48).) Defendant opposes this motion. (See Def.

Opp'n Class Cert. (Dkt. 56).) Plaintiff defines "Class A" as:

All natural persons residing in New York State:

> (i)      with whom defendant made an initial communication in connection with
> the collection of a consumer debt from November 9, 2009 to November 9,
> 2010; and
>
> (ii)     who did not pay the debt within five days after the initial communication;
> and
>
> (iii)    for whom the validation notice was not included in that initial
> communication; and
>
> (iv)     to whom defendant did not send written validation notice within five days
> after the date of initial communication.

(Pl. Mem. Class Cert. 1.) Plaintiff claims the proposed class comprises 379 members (id. at 2),

while Defendant contends it contains 192 persons (Def. Opp'n Class Cert. 9 n.2). Plaintiff

defines "Class B" as:

> All natural persons residing in New York State to whom defendant sent a
> validation notice letter[3] concerning a consumer debt from November 9, 2009 to
> November 9, 2010 which letter contained the statements, in sum or substance:
> "We are requesting that you telephone this office at [insert defendant's
> representative's telephone number], regarding your account rather than continuing
> to correspond by mail. We will hold your account for ten (10) [or any number of
> days shorter than 31] days, from the date of this letter, to give you the opportunity
> to settle this obligation."

(See Pl. Mem. Class Cert. 2 (alterations in original).) Plaintiff claims Class B comprises 12,214

members (id. at 3), while Defendant contends the number is 5,847 persons (Def. Opp'n Class

Cert. 9 n.2). It is clear that Class A is associated with Plaintiff's claims regarding the timeliness

---

[3]      Plaintiff clarifies in her Reply that "validation notice" refers to the first demand letter containing notice of
rights sent to a consumer, an important qualification. (See Pl. Reply Class Cert. 6.)

of the validation notice, and that Class B relates to Plaintiff's claims concerning false representations and overshadowing or contradictory language in the notice. (See Pl. Mem. Class Cert. 2.)

## A. Standard of Review

To certify a proposed class, the court must first find that the class meets the prerequisites of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. See Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 201-02 (2d Cir. 2008). There is also a fifth requirement implied under Rule 23(a), "that the identities of the class members are reasonably ascertainable by reference to objective criteria." United States v. City of New York, No. 07-CV-2067 (NGG), 2011 WL 2259640, at *3 (E.D.N.Y. June 6, 2011) (citing In re Initial Public Offerings Sec. Litig., 471 F.3d 24, 44-45 (2d Cir. 2006)). Once Rule 23(a)'s prerequisites are met, the court must find that the class falls within at least one of the categories under Rule 23(b). McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 222 (2d Cir. 2008), partially abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008). Here, Plaintiff has moved for class certification under Rule 23(b)(3). "Rule 23 does not set forth a mere pleading standard," and the party moving for class certification must show by a preponderance of the evidence that the Rule's requirements are met. Wal-Mart Stores, Inc., v. Dukes, --- U.S. ---, 131 S. Ct. 2541, 2551 (2011); see also Myers v. Hertz Corp., 624 F. 3d 537, 547 (2d Cir. 2010).

## B. Requirements Under Rule 23(a)

### 1. Numerosity

Numerosity requires that the class "be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no magic number, courts have found

9

numerosity to be satisfied by a class of forty members. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of forty members."); Annunziato v. Collecto, Inc., --- F.R.D. ---, No. 12-CV-3609 (ADS), 2013 WL 4045810, at *5 (E.D.N.Y. Aug. 9, 2013) ("[G]enerally, courts will find a class sufficiently numerous when it comprises forty or more members."). In the instant case, both Plaintiff and Defendant's estimates for both classes are well over forty, and Defendant does not dispute numerosity. Accordingly, the court finds both Class A and Class B meet this requirement.

      2.   Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is not destroyed by the existence of differences among class members so long as "injuries derive from a unitary course of conduct." Ramos, 796 F. Supp. 2d at 354 (quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997)). The Supreme Court has found that it is not enough for a plaintiff to show that class members "suffered a violation of the same provision of law." Dukes, 131 S. Ct. at 2551. Rather, a class's claims "must depend upon a common contention . . . . of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Here, Plaintiff's Class A requires a series of individualized findings of facts and law. For each class member, the court will be required to determine what contact with Defendant constitutes the "initial communication" (a legal question) and when the initial communication took place (a factual question). Class members may have had a variety of first contacts with Defendant: received a call and spoken to a representative, received a voicemail, received a missed call with no message, or, like Plaintiff, placed a call to Defendant. For each of these

10

scenarios, the court would have to determine if it legally falls within the FDCPA's definition of an "initial communication," an unsettled question at least regarding missed calls with no message.[4] Next, for each class member, the court would have to determine that date on which that initial communication took place in relation to the date of the validation notice, if any. As with Plaintiff's own case, the nature and timing of the initial communication may be disputed for many individual class members, making them not amenable to resolution on a class-wide basis. Questions regarding the initial communication are central to Class A's claims, which hinge on an issue of timeliness measured from the date of the initial communication. See Vengurlekar v. Silverline Techs., Ltd., 220 F.R.D. 222, 227 (S.D.N.Y. 2003) (noting commonality's "critical inquiry is whether the common questions are at the core of the cause of action alleged") (internal quotation marks omitted). Because these key questions of fact and law are not amenable to class-wide determination, the commonality requirement is not met for Class A.

Plaintiff's Class B, however, satisfies the commonality requirement because the central questions for claims associated with this class concern the language in near identical form notices generated by template. (Kidd Reply Decl. Ex. 2, at 106:13-25.) Notably, courts in this district have previously certified classes based on common claims that statements in form letters violated the FDCPA. See Annunziato, 2013 WL 4045810, at *13 (certifying a class defined, in part, as persons who "were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the defendant to the plaintiff"); D'Alauro v. G.C. Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (certifying a class defined, in part, as persons to

---

[4]     Plaintiff conceded that unanswered phone calls placed by Defendant to consumers where no message was left do not constitute "communications" under the FDCPA. (See Pl. Mem. Class Cert. 10.) However, Plaintiff subsequently submitted a letter drawing the court's attention to new authority from the Southern District of New York holding these calls to be "communications" under certain provisions of the FDCPA. (See Mar. 29, 2013, Pl. Ltr. re Additional Authority.) As this question is still unsettled in the Eastern District and unsettled for "initial communications" as the term is used in Section 1692g, the court would be required to make a legal determination regarding this type of contact.

whom a debt collector sent communications in the same form as the collection notices sent to the plaintiff). Determinations of questions of law and fact regarding the content of the form notices will easily apply to the entire class, and therefore commonality is established.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is established "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Brown, 609 F.3d at 475. The purpose of this requirement is to ensure that the named plaintiff does not have "unique" claims or defenses that "could potentially become the focus of the litigation." Annunziato, 2013 WL 4045810, at *7. In practice the "typicality requirement tends to merge with the commonality requirement" since "'[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be firmly and adequately protected in their absence.'" Rosario v. Valentine Ave. Discount Store, Co., Inc., No. 10-CV-5255 (ERK), 2013 WL 2395288, at *7 (E.D.N.Y. May 31, 2013) (alteration in original) (quoting Caridad v. Metro-N. Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999)).

When described generally as Defendant's "fail[ure] to send the validation notice within the five-day period," Plaintiff's timeliness claim may initially appear typical of Class A. (See Pl. Mem. Class Cert. 13.) When drilled down to its elements, however, Plaintiff's claim does not meet the typicality requirements due to potential divergence on the issue of "initial communication." The class is defined as those "with whom *Defendant made* an initial communication" but it is not clear whether this definition requires that Defendant initiated the

12

contact. If so, then the class may in fact exclude Plaintiff because the parties dispute whether the initial communication was initiated by Defendant or Plaintiff. This is an example of an issue related only to Plaintiff that "threaten[s] to become the focus of the litigation." In re Flag Telecom., 574 F.3d 29, 40 (2d Cir. 2009). Plaintiff does not respond to Defendant's argument that she falls outside the bounds of her own class. (Def. Opp'n Class Cert. 10.) Given the possibility that Plaintiff may be excluded from the class, in addition to the considerations discussed as part of the commonality analysis, the court finds that the requirements of typicality are not satisfied as to Class A.

Plaintiff's Class B establishes typicality because Plaintiff's claim regarding the content of the October 15th Letter is representative of elements and events that make up the claims of the class; indeed, the class is defined by Plaintiff's October 15th Letter. Plaintiff's claims could not be more similar to those of the class because both are based on near identical language in the notice letters. The court rejects Defendant's argument that Plaintiff's assertions about her confusion from and response to the letter are too individualized for a finding of typicality. (See id. 15.) Although these issues are indeed particular to Plaintiff, they are immaterial to the analysis of Plaintiff's claim (which employs an objective standard under the FDCPA, see Easterling v. Collecto, Inc., 692 F.3d 229, 233-34 (2d Cir. 2012)), and are therefore unlikely to "overshadow the common issues that dominate this class action proceeding." Annunziato, 2013 WL 4045810, at *8 (internal quotation marks and citations omitted).

4.    Adequacy

Adequacy of representation requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two components of this requirement: whether "(1) plaintiff's interests are antagonistic to the interest

13

of other members of the class, and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." In re Flag Telecom., 574 F.3d at 35. The purpose of these inquiries is to "uncover[] conflicts of interest between named parties and the class they seek to represent." Id.

The court finds Plaintiff to be a suitable representative of the interests of both classes. Plaintiff has testified to her familiarity with and commitment to her obligations as a class representative. (Vu Aff. ¶¶ 56-64; Kidd Decl. (Dkt. 48-3) Ex. 8 (Vu Dep.), at 53:20-55:18.) Defendant argues that Plaintiff lacks credibility based on purported inconsistencies in her testimony about her confusion. (See Def. Opp'n Class Cert. 17-18.) Defendant's account of Plaintiff's inconsistencies is fervently disputed in Plaintiff's summary judgment papers (see Pl. Mem. Summ. J. 23-24), and the court declines to decide this issue of fact. In any event, the issue of Plaintiff's confusion—or lack thereof—is ancillary to FDCPA claims, which apply an objective standard. See Harrison v. Great Springwaters of Am. Inc., No. 96-CV-5110, 1997 WL 469996, at *7 (E.D.N.Y. June 18, 1997) ("To defeat certification . . . knowledge and credibility problems must be so substantial that they threaten to undermine the plaintiffs' case as a whole. Short of such a showing, courts often certify even in the face of compelling evidence that they . . . have given inconsistent testimony."). Therefore Plaintiff's adequacy is not precluded on these grounds. Defendant also contends that Plaintiff's interests conflict with those of the class due to defenses specific to Plaintiff: (1) that Plaintiff's facts do not support her claims, (2) that "the Collection letter may not have been the first received by a class member," and (3) Plaintiff's "admission that she understood the Collection Letter." (Def. Class Cert. Opp. 19.) The first defense is deployed so frequently in litigation that it is hardly particularized enough to present a conflict between Plaintiff and the class members. The second defense is nullified by Plaintiff's definitions of the proposed classes, neither of which would include individuals who had

14

previously received a validation notice. (Pl. Mem. Class Cert. 1; Pl. Reply Class Cert. 6.) As for the third defense, as discussed above, Plaintiff's understanding of the letter is immaterial to the litigation. As such, Plaintiff meets the adequacy of representation requirement.

Likewise, the court also finds Plaintiff's counsel to be adequate. There is no evidence in the record that Plaintiff's counsel has ever been accused of misconduct. See Kingsepp v. Wesleyan Univ., No. 89-CV-6121 (DNE), 1992 WL 230136, at *1 (S.D.N.Y. Sept. 3, 1992). Furthermore, the court finds Defendant's attack on Plaintiff's litigation strategy unavailing; litigants often amend or refine their arguments over the course of litigation, and such acts are hardly proof of incompetence.[5] To the extent Defendant raises concerns about Plaintiff counsel's experience, the court observes that she has participated in FDCPA class actions before and presumes that in the event she encounters an unfamiliar facet of the litigation, she will draw upon the institutional knowledge at her firm regarding these types of cases. Adequacy is established as to both classes.

### 5. Ascertainability

Implied under Rule 23(a) is a fifth requirement that "the identities of a class must be reasonably ascertainable using objective criteria." United States v. City of New York, 2011 WL 2259640, at *3. Defendant argues that the proposed classes cannot be objectively identified due to Plaintiff's changing definitions of the class. (Def. Opp'n Class Cert. 9.) However, through searches of its database guided by Plaintiff's various class definitions, Defendant has been able to produce estimates of the class sizes, thereby demonstrating both classes' ascertainability. (Id.) Given Defendant's assertions regarding the debtor collection transaction history it maintains for each account, it should be able to determine the identity of the class members as well. To

---

[5]     Any request that Defendant be permitted to depose Plaintiff's counsel (see Def. Opp'n Class Cert. 20), is denied. Should circumstances change and Defendant have good cause to support such a deposition, it may make a request by letter to the court.

resolve any lingering disputes regarding class size, the court will permit submissions based on any class definition certified in this order.

## C. Requirements Under Rule 23(b)

Once the court finds that the prerequisites under Federal Rule of Civil Procedure 23(a) have been satisfied, it must determine whether the class fits into one of the three categories under Rule 23(b). Fed. R. Civ. P. 23(b). Plaintiff has sought to certify two proposed classes under Federal Rule of Civil Procedure 23(b)(3) (see Pl. Mem. Class Cert. 16), which requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

The predominance prong evaluates the cohesiveness of a class and is a more stringent test than commonality under Rule 23(a). Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). This requirement is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Id.

As discussed in the commonality and typicality sections, Plaintiff's Class A requires individualized factual and legal determinations regarding Defendant's initial communication with each class member, an element of the timeliness claim. These questions could not be resolved with generalized poof. Although Defendant's company-wide procedures for dispatching validation notices may be susceptible to generalized proof, the instances where this procedure went awry—the crux of Plaintiff's claim—can be proved only on an individual basis

16

by demonstrating the timing of the initial contact in relation to the validation notice, if any. These fact issues may differ for each class member. Accordingly, Class A fails to meet the predominance requirement. As for Class B, however, the key question is whether statements in the collection letters violate the FDCPA's provisions regarding false representation and overshadowing or contradictory language. Proof regarding the common language should apply generally across the class. Therefore, common issues predominate as to Class B.

   2. <u>Superiority</u>

 In assessing the second prong of Rule 23(b), the court considers:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. Rule 23(b)(3). Class litigation is a superior vehicle for the instant case given economies of scale. FDCPA cases are unlikely to be brought on an individual basis due to the statute's low cap on individual damages, especially when compared to potential litigation costs. See 15 U.S.C. § 1692k(a)(2) (individual damages capped at $1,000, but class action damages capped at $500,000 or 1% of debt collector's net worth, whichever is less). Additionally, a class action will promote a unity of analysis and outcome, compared to potentially conflicting outcomes across a multitude of individual suits. Therefore superiority is met as to both classes.

   *  *  *

 Because Class A fails the commonality and typicality prerequisites of Rule 23(a), as well as the predominance requirement of Rule 23(b)(3), class certification as to Class A is denied.

The court finds that Class B satisfies all requirements under Rule 23, and therefore class certification as to Class B is granted. The court appoints Novlette R. Kidd, Esq., as Class Counsel.

## IV.    SUMMARY JUDGMENT

### A.    Standard of Review

A motion for summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000). Further, the burden of showing the absence of any genuine dispute as to a material fact rests on the movant. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such a situation, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323 (internal quotation marks omitted). A grant of summary judgment is also proper "[w]hen no rational jury could find in favor of the nonmoving party because the evidence

to support its case is so slight." <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

The party opposing summary judgment is not entitled to rely on unsworn allegations in the pleading, but must instead "show that there is admissible evidence sufficient to support a finding in her favor on the issue that is the basis for the motion." <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 361 (2d Cir. 2001). Even where a statement is sworn, the information therein should not be taken into account on a summary judgment motion to the extent it constitutes hearsay "that would not be admissible at trial if testified to by the affiant." <u>Patterson v. Cnty. of Oneida, N.Y.</u>, 375 F.3d 206, 219 (2d Cir. 2004). "Nor is a genuine issue created merely by the presentation of assertions that are conclusory." <u>Id.</u>

**B.     DISCUSSION**

Both parties have moved for summary judgment. Plaintiff's motion claims that Defendant violated the FDCPA, and Defendant's cross-motion asserts the bona fide error defense against all claims. The court will consider these arguments in turn.

1.     <u>Plaintiff's FDCPA Claims</u>

The purpose of the Fair Debt Collection Practices Act ("FDCPA") is to "eliminate abusive debt collection practices [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). The FDCPA defines consumers' rights, establishes requirements for debt collectors, and sets forth penalties for violations of the statute. <u>See</u> 15 U.S.C. § 1692, <u>et seq.</u> As an initial matter, the parties do not dispute that Plaintiff is a "consumer," and the sum Defendant attempted to collect from her is a "debt" as defined by Section 1692a of the FDCPA. (<u>See</u> Pl. 56.1 St. ¶¶ 2-3; Def. Resp. 56.1 St. ¶¶ 2-3.) The court agrees. The FDCPA defines a "debt collector" as one

"who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Defendant, who admits to "work[ing] with public and private lenders to recover delinquent accounts [that Defendant] receives . . . . from its clients on a contractual basis," (Def. Resp. 56. St. ¶ 4), falls squarely within the Act's definition.

The FDCPA requires debt collectors to apprise consumers of certain information and rights. Within five days of the "initial communication" with a consumer, the debt collector must send the consumer a written notice that includes the amount of the debt, the creditor's name, and three pieces of information that have thirty-day deadlines: (1) the debt collector will assume the debt to be valid unless the consumer disputes the debt within thirty days; (2) if the consumer disputes the debt in writing within thirty days, the debt collector will obtain verification of the debt or a judgment against the debtor; and (3) if the consumer submits a written request within thirty days, the debt collector will provide the name and address of the original creditor. See U.S.C. § 1692g(a). The written notice containing this information is termed the "validation notice." (Pl. Mem. Summ. J. 8.)

a.   *Timeliness of Validation Notice*

As part of her First Cause of Action, Plaintiff claims that Defendant violated the FDCPA's requirement that a debt collector must send a consumer a validation notice within five days of its initial communication with the debtor. (Id.) The parties dispute when the initial communication between Defendant and Plaintiff occurred; Plaintiff claims Defendant began leaving voicemails for Plaintiff as early as September 2010 (Vu Aff. ¶¶ 13-17), and Defendant claims that although it began placing unanswered phone calls to Plaintiff in August 2010, there was no communication because Defendant did not leave a voicemail or speak to Plaintiff until

October 2010. (Christie Aff. ¶ 5 and Ex. 1.) The timing of the first contact between Defendant and Plaintiff is immaterial because the parties agree that on October 5, 2010, Plaintiff spoke to DCS representative Adams on the phone. (Pl. 56.1 St. ¶¶ 14, 21; Def. 56.1 St. ¶ 27.) In a footnote in its opposition to Plaintiff's class certification motion, Defendant argues briefly that the October 5th Call does not constitute an "initial communication" under Section 1692g because it was initiated by Plaintiff. (Def. Opp'n Class Cert. 10 n.3.) Defendant states that this argument is discussed in its opposition to Plaintiff's summary judgment motion (id.), but it is nowhere to be found in the brief. Defendant's footnote cites as support two cases concerning consumer-initiated communications under Section 1692e. (Def. Opp'n Class Cert. 10 n.3. (citing <u>Boyd v. J.E. Robert Co.</u>, No. 05–CV–2455(KAM), 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010) and <u>Nichols v. Wash. Mut. Bank</u>, No. 07-CV-3216(JG), 2007 WL 4198252, at *4-5 (E.D.N.Y. Nov. 21, 2007).) However, Defendant reads these cases too narrowly. A "communication" is broadly defined under the FDCPA as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2). The court in <u>Nichols</u> found that a phone call was not an actionable communication not only because the consumer initiated the call, but *also* because the defendant "was not in the process of collecting a debt" during the call. 2007 WL 4198252, at *5. Likewise, the court in <u>Boyd</u> came to the same conclusion because defendants "were simply responding to inquiries made by [plaintiff]" during the call. 2010 WL 5772892, at *13; <u>see also</u> <u>Gorham-Dimaggio v. Countrywide Home Loans, Inc.</u>, No. 05-CV-0583, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005) ("[T]here is a distinction between attempting to collect a debt and responding to a consumer's voluntary inquiries how to bring a debt current.") (internal quotation marks omitted).

21

Even reading the facts in the light most favorable to Defendant, there is no doubt that Defendant was "in the process of collecting a debt" during the October 5th Call. Adams expressly said so twice during the call and went beyond simply responding to Plaintiff's inquiries by collecting extensive contact and financial information from Plaintiff for the purpose of debt collection. (Montoya Decl. Ex. 2 (Transcript of Calls), at 3:8-10, 6:20-13:23 ("I must let you know that this call is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose.").) To remove a collection attempt such as this from the purview of the FDCPA based on which party dialed the phone would create a loophole and frustrate the purposes of the Act. Therefore the October 5th Call constitutes a communication, and under Defendant's facts, it was the initial communication. As such, Defendant's validation notice was untimely because Defendant did not send Plaintiff a letter containing the notice until October 18, 2010, at the earliest, more than five days after the October 5th call. (Def. 56.1 St. ¶ 33; Pl. Resp. 56.1 St. ¶ 33.) On these facts, the court finds a clear violation of Section 1692g(a).

i.    False Representation or Deceptive Means Claim

Plaintiff claims that the facts relating to the untimeliness of Defendant's validation notice also support a finding that Defendant violated Section 1692e(10), which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." It is not apparent to the court how the notice's delayed arrival itself constituted a false representation or deceptive means to collect the debt, and Plaintiff presents little support for this claim. (See Pl. Mem. Summ. J. 13.) In the cases cited by Plaintiff in which courts found twin violations of the validation notice provision (Section 1692g) and the false representation provision (Section 1692e) based on the same set of facts, those facts related to the *content* of the validation notice, not the fact that it was sent late. Tipping-Lipshie

v. Riddle, No. 99-CV4646, 2000 WL 33963916, at *4 (E.D.N.Y. Mar. 2, 2000) (violation due to "one week" language in letter); Vera v. Trans-Cont'l Credit & Collection Corp., No. 98-CV-1866 (DC), 1999 WL 163162, at *4 (E.D.N.Y. Mar. 24, 1999) (violation due to notice's ambiguity as to when thirty-day period began to run). Therefore, although there may be no triable issues of fact, the facts regarding the untimeliness of Defendant's validation notice do not support a finding of a violation of Section 1692e.

        b.    *Defendant's Request that Plaintiff Correspond by Phone Rather than Mail*

                i.    Overshadowing or Contradictory Claim

In her Second Cause of Action, Plaintiff claims that Defendant's October 15th Letter contained language that overshadowed and contradicted the proper validation notice printed on the back of the letter, a violation of Section 1692g(a). (Pl. Mem. Summ. J. 13.) Specifically, Plaintiff claims that statements requesting that she "telephone this office . . . rather than continuing to correspond by mail" and imploring that Defendant "must talk to [her]" contradict the validation notice's advisement that a debtor's right to dispute a debt or request information about the original creditor can be exercised only by submitting something in writing. (Id. 14.)

When evaluating a communication from a debt collector under the FDCPA, the court applies the "least sophisticated consumer" standard. Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993) (noting that this standard has been "adopted by all federal appellate courts that have considered the issue"). This standard is objective. McAfee v. Law Firm of Forster & Garbus, No. 06-CV-2925 (NGG), 2008 WL 3876079, at *5 (E.D.N.Y. Aug. 18, 2008). It does not take into account the level of comprehension or reaction to the communication of the debtor before the court. Easterling v. Collecto, Inc., 692 F.3d 229, 234 (2d Cir. 2012) ("[I]t was error for the district court to rely on [the particular debtor's] circumstances."). Rather, the court

adopts the lens of an imagined "least sophisticated consumer," albeit one with "a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005). A notice letter is considered overshadowing or contradictory "if it would make the least sophisticated consumer uncertain as to her rights." Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996). Such a notice could, for example, "present[] . . . two different and conflicting statements." Id. at 34.

The mere provision of a telephone number or a request that the consumer contact the debt collector, however, does not necessarily overshadow the notice that the consumer can assert certain rights only in writing. See Ehrich v. I.C. System, Inc., 681 F. Supp. 2d 265, 271-72 (E.D.N.Y. 2010) ("[A] debt collection letter may include a convenience, something (like a phone number) that subtly encourages a consumer to make a payment on a debt.") (internal quotation marks omitted); Lerner v. Forster, 240 F. Supp. 2d 233, 238 (E.D.N.Y. 2003) (validation notice is not overshadowed "simply because a collection letter instructs a consumer to contact a debt collector") (internal citations omitted). But the notice crosses the line when "emphasis is placed on the phone number in any way." Ehrich, 681 F. Supp. 2d, at 272.

The parties do not dispute the language contained in the October 15th Letter. It is immaterial whether Plaintiff was in fact confused by the letter or whether Plaintiff's prior phone call with Adams provided context for her to understand it because the "least sophisticated consumer" standard ignores Plaintiff's particular circumstances. See Easterling, 692 F.3d at 234.

Defendant's October 15th Letter went beyond providing Plaintiff the option or convenience of contacting Defendant by phone, by specifically requesting that Plaintiff refrain from correspondence by mail. (See Montoya Decl. Ex. 1, at DCSI_000007.) This placed

improper emphasis on telephonic communication. See Ehrich, 681 F. Supp. 2d, at 272. This request conflicted with the validation notice on the reverse side, which (correctly) stated that a consumer must write to dispute the debt or obtain certain information. The least sophisticated consumer could be confused as to the proper course of action to assert her rights. See Russell, 74 F.3d at 35. Defendant's argument that the letter makes clear that Defendant sought to discuss only settlement options—"finaliz[ing] any arrangements necessary to retire [Plaintiff's] obligation"—by phone is unavailing. (See Def. Opp'n Summ. J. 18.) There is no indication in the letter that Plaintiff should forgo written communication relating only to settlement; a plain reading of the front of the letter, certainly from the view of an unsophisticated consumer, leaves the understanding that Plaintiff should not send *any form* of written correspondence. Therefore as a matter of law, the October 15th Letter's request that Plaintiff not correspond by mail overshadowed the validation notice in violation of Sections 1692g(a)(4) & (5) of the Act.

ii.     False, Deceptive, or Misleading Representation Claim

The FDCPA also prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A communication is considered false, deceptive, or misleading if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." Easterling, 692 F.3d at 233. This too is assessed under a least sophisticated consumer standard. Id. Some courts have incorporated a materiality prong into this analysis. See Fritz v. Resurgent Capital Servs. L.P., --- F. Supp. 2d ---, No. 11-CV-3399 (FB), 2013 WL 3821479, at *3 (E.D.N.Y. July 24, 2013), (citing Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 374 (4th Cir. 2012); Lane v. Fein, 767 F. Supp. 2d 382, 389 (E.D.N.Y. 2011) (collecting cases). Fritz adopted this approach, reasoning that claims involving misrepresentation generally require materiality as an element. 2013 WL 3821479, at

*3 (citing as persuasive <u>Gabriele v. Am. Home Mortg. Servicing, Inc.</u>, 503 F. App'x 89, 94 (2d Cir. Nov. 23, 2012)). A misrepresentation is material if it "could mislead a putative-debtor as to the nature and legal status of the underlying debt or . . . could impede a consumer's ability to respond to or dispute collection." <u>Id.</u> at *3. Defendant cites <u>Hasbrouck v. Arrow Fin. Servs. L.L.C.</u> in support of its proposition that statements are material if they "influence the consumer's decision to pay a debt." (Def. Opp'n Summ. J. 17 (citing <u>Hasbrouck</u>, No. 09-CV-748 (MAD), 2011 WL 1899250 at *4 (N.D.N.Y. May 19, 2011).) <u>Hasbrouck</u> examined, as part of materiality, the circumstances of the particular debtor in that case. 2011 WL 1899250, at *6 (finding statements to be immaterial because plaintiff did not claim confusion regarding her obligations or the validity of the debt and plaintiff immediately hired counsel to vacate a default judgment against her). Insofar as Defendant argues that the court should consider Plaintiff's alleged lack of confusion in its materiality analysis, the court declines to follow <u>Hasbrouck</u>, which would eviscerate the least sophisticated consumer standard.

In her Third Cause of Action, Plaintiff claims Defendant's request that Plaintiff telephone rather than correspond by mail also violated the FDCPA's provisions prohibiting false, deceptive, or misleading representations. (Pl. Mem. Summ. J. 17.) Again, there is no triable issue of fact as to the content of the October 15th Letter. As a matter of law, the letter's language, when interpreted by the least sophisticated consumer, could be reasonably understood to mean that a consumer must write in order to dispute a debt (an accurate reading) or could be reasonably understood as an instruction to forgo communication in writing (an inaccurate reading). Such possible dual interpretation renders the communication false, deceptive, or misleading since one of the interpretations is wrong. <u>Easterling</u>, 692 F.3d at 233. The statement requesting that Plaintiff call rather than write is material because if heeded, it would prevent a

26

consumer from properly disputing the debt. See Fritz, 2013 WL 3821479, at *3. Accordingly, the undisputed facts in the record support a finding of a violation of Sections 1692e and 1692e(10).

            c.      *Defendant's Ten-day Deadline*

In her Fourth Cause of Action, Plaintiff claims that the October 15th Letter's statements imposing a ten-day deadline violated the FDCPA by shortening the statute's thirty-day period that a consumer has to dispute a debt or request information about a creditor. (Pl. Mem. Summ. J. 18.) It is well settled that a debt collector's demand for immediate payment or payment before the end of the statutory thirty-day period overshadows the validation notice. Rumpler v. Phillips & Cohen Assocs., Ltd., 219 F. Supp. 2d 251, 259 (E.D.N.Y. 2002) (In "the vast majority of cases in this Circuit in which courts have found [language regarding payment] to be overshadowing, the letter . . . demands *immediate* payment . . . or threatens adverse consequences in the event the debt is not paid within thirty days of receipt of the letter.") (emphasis in original) (citing Savino v. Computer Credit, Inc., 164 F.3d 81, 85-86 (2d Cir.1998)). A debt collector is free, however, to offer a shorter time period to negotiate a settlement or provide a deadline by which a settlement offer will expire that is less than thirty days. Omogbeme v. Risk Mgmt. Alternatives, Inc., 01-CV-7293 (SJ), 2003 WL 21909773, at *3 (E.D.N.Y. Aug. 4, 2003) ("[T]he fact that the discount offer expires before the thirty day validation period does not provide evidence of overshadowing.") (internal quotation marks omitted).

Again, the parties do not dispute the content of the October 15th Letter. Therefore the question of law is whether the letter's statement that Defendant "will hold [Plaintiff's] account for ten (10) days . . . to give [her] the opportunity to settle this obligation" would be understood by the least sophisticated consumer as a demand for payment in ten days or alternatively, a ten-

27

day period to negotiate a settlement. The court finds that this language overshadows the validation notice. The statement that Plaintiff has ten days to "settle her obligation" could be reasonably understood by the least sophisticated consumer as the deadline to pay the balance, creating uncertainty as to the consumer's rights. See Russell, 74 F.3d at 35. Defendant's letter extends no settlement offer, contains no reference to engaging in negotiations for a discounted amount, and provides no clarification that the ten-day settlement period does not displace the thirty days Plaintiff has to dispute or pay the full amount of the debt. See Omogbeme, 2003 WL 21909773, at *3 (finding no overshadowing when letter expressly offered a discounted settlement amount if Plaintiff paid immediately); Harrison v. NBD, Inc., 968 F. Supp. 837, 848 (E.D.N.Y. 1997) (same). Rather the language suggests that Plaintiff must pay up in ten days, in contradiction of the validation notice's thirty-day deadline and in violation of Section 1692g(a) of the Act.

      2.     Defendant's Bona Fide Error Defense

    In its Cross-Motion for Summary Judgment, Defendant argues that to the extent it violated any provision under the FDCPA, it is entitled to the Act's bona fide error defense:[6]

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

---

[6]    Plaintiff argues that Defendant should be precluded from asserting a bona fide error defense due to deficient pleading and failure to provide adequate discovery on the defense. (Pl. Reply Summ. J. 3.) The court, in its discretion, permits the defense to go forward. See Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989); Puglisi v. Debt Recovery Solutions, L.L.C., 822 F. Supp. 2d 218, 227 n.9 (E.D.N.Y. 2011). Plaintiff is not prejudiced by allowing the defense to proceed. Defendant's Answer to the Complaint and Answer to the Amended Complaint both pleaded the defense, and Defendant previewed its defense in it pre-motion letter to the court. (Answer (Dkt. 5) ¶ 24; Am. Answer (Dkt. 11) 7; Oct. 2, 2012, Def. Ltr. (Dkt. 42).) Plaintiff deposed two of Defendant's witnesses about Defendant's procedures and was informed of Mr. Nasim's involvement but declined to depose him. Plaintiff has had both notice of the defense and opportunity to obtain facts about the defense.

15 U.S.C. § 1692k(c). To take advantage of this defense, a debt collector "need not demonstrate that its procedures for avoiding [FDCPA] violations are fool proof, but rather, must only show that its procedures constitute a reasonable precaution." Puglisi v. Debt Recovery Solutions, L.L.C., 822 F. Supp. 2d 218, 226-27 (E.D.N.Y. 2011) (alteration in original) (internal quotation marks and citation omitted).

a.   *Defendant's Procedures Concerning Timely Notice*

In support of its bona fide error defense, Defendant relies on an affidavit of Rashid Nasim ("Nasim Aff."), deposition testimony from Dennis Christie and Frances Rebeira, and a document entitled "Debtor Collection Transaction History." (See Def. Opp'n Summ. J. 22-24.) The record also contains an affidavit of Dennis Christie, which lays the foundation for the Transaction History. (See Christie Aff. ¶¶ 3-4.) Based on these documents, Defendant argues that since 2007, it has had a computerized system in place to ensure that an initial demand letter is mailed to a debtor within five days of Defendant's receipt of the account and before the account is transferred to its collections division, where a representative may begin to contact the debtor by phone. (Nasim Aff. ¶ 7.) In the case of Plaintiff's account, Defendant argues that "client initiated changes to the letter template" caused a computer glitch in the automatic process of generating and printing the initial demand letter. (Nasim Aff. ¶ 10.) According to the Transaction History for debtor's account, on August 16, 2010, the "initial demand letter request" was "rejected." (Christie Aff. Ex. 1 at DCSI_000001.) Defendant claims that a similar computer glitch has affected 192 of the 26,065 accounts processed during a year-long period. (Nasim Aff. ¶ 11.)

Plaintiff offers a perfunctory denial of these particular facts, citing Plaintiff's own affidavit, (see Pl. Resp. 56.1 St. ¶¶ 5-13 (citing Vu Aff.)), but the affidavit is devoid of reference

to Defendant's procedures regarding the issuance of demand letters and cannot be credited. Plaintiff further argues that the Nasim affidavit and the Transaction History are inadmissible hearsay. (Pl. Reply Summ. J. 7-8.) Plaintiff's contention that Nasim lacks personal knowledge about the glitch because of his geographic location is nonsensical in the age of integrated computer systems. Nasim avers that as IT Director, he has knowledge of Defendant's computer system and can also review information in the system regarding debtor accounts. (See Nasim Aff. ¶¶ 2, 10.) As long as he had access to the computer system, his location is irrelevant. As for the Transaction History, this document falls within the business records exception under Federal Rule of Evidence 803(6), because Defendant creates logs of this type for each debtor's account in the regular course of business. (See Christie Aff. ¶¶ 3-4.) Therefore the court finds both documents to be admissible and has considered them.

Plaintiff points to additional facts in the record to demonstrate the weaknesses of Defendant's procedures, arguing that its safeguards are not "reasonably adapted" to prevent the FDCPA violations that occurred. (See Pl. Reply Summ. J. 9-13.) For example, it is not apparent that Nasim, who supervises operation of Defendant's computer system, receives compliance training. (See Nasim Aff.) Plaintiff also argues that Defendant's training of collectors does not prepare them to check for problems regarding issuance of a validation notice before contacting a debtor. (Kidd Reply Decl. Ex 2, at 95:15-24; Ex. 5, at 76:22-25.) Plaintiff also disputes that Defendant's procedures would have prevented errors caused specifically by "client-initiated changes." (Pl. Reply 12.) Drawing all reasonable factual inferences in the Plaintiff's favor, the court finds that there are genuine disputes of material fact as to the extent of Defendant's procedures and their ability to prevent the specific type of computer glitch that occurred. Although Defendant's evidence makes a prima facie showing to raise the bona fide error

30

defense, the court cannot resolve the issue on summary judgment. Therefore the court denies Defendant's Cross-Motion for Summary Judgment with respect to its bona fide error defense to Plaintiff's timeliness claim.

### b.    *Defendant's Procedures Concerning Content of Letters*

The record suffers from a dearth of evidence about Defendant's safeguards in place to prevent violations of the FDCPA due to false, deceptive, overshadowing, or contradictory language in validation notices. Defendant provides only the conclusory assertion that had a timely initial demand letter been sent to Plaintiff, "none of Plaintiff's alleged violations concerning the [October 15th Letter] would be viable because she would have received the initial demand letter more than thirty days before[hand]." (Def. Opp'n Summ. J. 23.) This assertion is a "but for" argument that says nothing about Defendant's quality control of the *content* of its letters. Defendant does not dispute that it sent the October 15th Letter or claim that the language contained therein was unintentional. See Russell, 74 F.3d at 36 (rejecting a bona fide error defense because "[o]nce it is shown that defendant sent the . . . notices and that they failed to fulfill the requirements of the Act, strict liability is imposed"). Defendant's cursory treatment of these claims fails to meet its burden for its affirmative defense to Plaintiff's false representation, and overshadowing and contradictory language claims, namely Plaintiff's Second, Third, and Fifth Causes of Action. Summary judgment in favor of Defendant on the bona fide error defense to those claims is denied.

\*    \*    \*

In sum, Plaintiff's motion for summary judgment as to her timeliness claims (First Cause of Action) is denied. While the court finds that no reasonable jury could deny that Defendant violated the timely notice requirement of Section 1692g(4)-(5), there are triable issues of fact as

31

to whether Defendant's violation was a bona fide error. Therefore Defendant's cross-motion for summary judgment on its defense to Plaintiffs timeliness claim is also denied. Plaintiff's motion for summary judgment is granted as to her false representation claims and overshadowing or contradictory language claims contained in Plaintiff's Second, Third, and Fifth Causes of Action. Defendant's cross-motion is denied as to the defense to those claims.

## V. CONCLUSION

Plaintiff's motion for class certification is DENIED as to Class A and GRANTED as to Class B. Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART on behalf of Plaintiff and Class B. As to her First Cause of Action, Plaintiff's motion for summary judgment is DENIED. As to her Second, Third, and Fifth Causes of Action, Plaintiff's motion for summary judgment is GRANTED. Defendant's cross-motion for summary judgment is DENIED.

The parties are directed to contact Magistrate Judge Reyes to arrange a schedule for further proceedings: Plaintiff shall revise the complaint to reflect the removal of Class A from this action. Parties shall file submissions supporting their estimates of the number of members of Class B based on the definition contained in this order. Plaintiff shall provide the court with a proposal for notice procedures required under Federal Rule of Civil Procedure 23(c)(2)(B). Trial may go forward on the remaining claims and defenses, and the parties shall submit a proposed pre-trial order.


SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
September 30, 2013

NICHOLAS G. GARAUFIS
United States District Judge